UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
IRA DAVISON, JR.,                                :
                                                 :
                Plaintiff,           :
                                                 :            **MEMORANDUM AND ORDER**
         -against-                     :            10-CV-2180 (DLI)(RLM)
                                                 :
GOODWILL INDUSTRIES OF GREATER                   :
NEW YORK AND NORTHERN NEW                        :
JERSEY, INC., GALINA SHUB, LINDA                 :
TURNER and ANTHONY NAPOLI,                       :
                                                 :
                Defendants.         :
------------------------------------------------------------ x

**DORA L. IRIZARRY, U.S. District Judge:**

        Plaintiff Ira Davison, Jr. ("Plaintiff") commenced this action against his employer, Goodwill Industries of Greater New York and Northern New Jersey, Inc. ("Goodwill") and three of its employees, Galina Shub ("Shub"), Linda Turner ("Turner"), and Anthony Napoli ("Napoli," collectively "Defendants"), asserting claims of defamation and intentional infliction of emotional distress ("IIED") and imputing vicarious liability to Goodwill. (Dkt. Entry No. 13, Amended Complaint ("Am. Compl.").) On May 23, 2011, Defendants moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint for failure to state a claim. (Dkt. Entry No. 20, Mot. to Dismiss.) Plaintiff, who is represented by counsel, has failed to oppose the motion in the time since it was filed. Accordingly, the motion is deemed unopposed. For the reasons set forth below, Defendants' motion is granted.

<u>**BACKGROUND**</u>

**I.    Plaintiff's Employment History and Suspension**

        In August 2003, Plaintiff was hired through Goodwill's Back-to-Work Program as a workforce development instructor at Goodwill's offices in Queens, New York. (Am. Compl. ¶

13.) Plaintiff was continuously employed with Goodwill until January 2010, during which time he maintained a clean disciplinary record. (*Id.* ¶¶ 14–15.) On January 4, 2010, Shub, Vice President of Goodwill's Back-to-Work Program, informed Plaintiff that he was suspended pending investigation of a complaint that a client had filed against him (the "Client Complaint") for alleged sexually inappropriate behavior. (*Id.* ¶¶ 9, 15.)

Plaintiff's suspension lasted from January 4, 2010 until February 2, 2010, during which time Plaintiff communicated with Shub and Napoli, Goodwill's Senior Vice President for Human Resources, to deny that he had engaged in any inappropriate behavior and to demand that he be reinstated. (*Id.* ¶¶ 11, 15, 18–24, 31.) He also requested a copy of the Client Complaint, which Shub and Napoli declined to provide. (*Id.* ¶¶ 18, 21.) On January 15, 2010, Plaintiff was notified in a letter from Napoli that his employment at Goodwill had been terminated following an investigation of the Client Complaint. (*Id.* ¶ 20.) On January 26, 2010, Plaintiff initiated a meeting with Napoli to assert his innocence and voice his suspicion that no investigation had actually taken place. (*Id.* ¶ 21–22.)

On February 1, 2010, Plaintiff received a letter from Napoli. (*Id.* ¶ 25.) It stated that Plaintiff's termination was being revoked and his employment at Goodwill reinstated, because there was no evidence to corroborate the Client Complaint. (*Id.* ¶ 26.) The letter also informed Plaintiff that the incident alleged in the Client Complaint and the attending investigation were confidential; Plaintiff was directed not to discuss the matter with co-workers, and his supervisors and managers were likewise directed to keep the matter confidential. (*Id.* ¶¶ 27–28.) On February 2, 2010, Plaintiff returned to work at Goodwill. (*Id.* ¶ 31.)

II. **The Alleged Defamation**

Plaintiff alleges that, during his suspension, at least three co-workers informed him of

2

rumors spreading around the office that he had engaged in inappropriate sexual acts with a client in the office, and had forcibly cornered a client in the office to proposition her for a date. (Am. Compl. ¶ 29.) In a telephone conference with Napoli following his termination, Plaintiff complained about the proliferation of these rumors. (*Id.* ¶ 24.)

When Plaintiff returned to work, he allegedly encountered the rumors firsthand. He overheard a security officer, as well as an office manager, saying that Plaintiff had requested sexual favors from a client while in the office, and that Plaintiff had a history of sexually harassing female clients. (*Id.* ¶¶ 32–34.) Dismayed by these rumors, Plaintiff met with Shub, who allegedly told him that no investigation had taken place prior to his termination. (*Id.* ¶¶ 33–34.) Plaintiff, to no avail, again requested that Shub furnish him a copy of the Client Complaint. (*Id.* ¶¶ 34–35.) He then demanded that Shub explain why rumors were spreading throughout the office. Plaintiff told Shub the rumors could not have started unless Shub divulged to employees confidential details about the Client Complaint or other allegations of sexual misconduct against him. (*Id.* ¶ 34.) Shub neither confirmed nor denied that she had divulged any such confidential information. (*Id.* ¶ 36.)

On May 12, 2010, Plaintiff commenced this action against Defendants, asserting three claims: (1) a defamation claim against Shub for maliciously leaking out baseless rumors to office staff that Plaintiff had engaged in various forms of sexually inappropriate behavior towards female clients while at Goodwill (*id*. ¶¶ 39–53); (2) an IIED claim against Shub, stemming from the same alleged rumors (*id.* ¶¶ 54–59); and (3) a claim imputing vicarious liability for Shub's actions to Goodwill, both because Shub was acting within the scope of her employment when making the alleged defamatory statements, and because Napoli and Turner ratified Shub's actions. (*Id.* ¶¶ 60-70.)

**DISCUSSION**

**I. Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To determine whether dismissal is appropriate, "a court must accept as true all [factual] allegations contained in a complaint" but need not accept "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Thus, a court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Securities Litigation*, 503 F. 3d 89, 95 (2d Cir. 2007) (citation omitted). For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Iqbal*, 129 S.Ct. at 1949. Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* at 1950 (internal quotation marks and citation omitted).

**II. Analysis**

*A. Defamation*

To maintain an action for defamation under New York law, a plaintiff must establish: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused special damages." *Ahmed v. Bank of Am.*,

2010 WL 3824168, at *4 (E.D.N.Y. Sept. 24, 2010) (quoting *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (internal quotation marks and citation omitted)). "While a defamation claim need not be pled *in haec verba*, a complaint alleging defamation 'is only sufficient if it adequately identifies the purported communication, and an indication of who made the statement, when it was made, and to whom it was communicated.' " *Id.* (quoting *Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16, 2007) (internal quotation marks and citation omitted)). The central concern is that a defendant is on notice as to the communications complained of so that she is able to defend herself. *See Kelly v. Schmidberger*, 806 F. 2d 44, 46 (2d Cir. 1986). Thus, a claimant's mere conclusory statement that he or she was disparaged by false statements is insufficient to state a defamation claim. *Ahmed*, 2010 WL 3824168, at *4 (citing *Reilly v. Natwest Markets Grp., Inc.*, 181 F. 3d 253, 271 (2d Cir. 1999)). Here, Plaintiff's complaint is principally premised on conclusory statements and deductions; moreover, it lacks the specificity required to state a defamation claim. Accordingly, the claim is dismissed.

Plaintiff alleges in a conclusory manner that Shub defamed him by divulging to other Goodwill employees details of Plaintiff's alleged sexual misconduct as documented in the Client Complaint. (*See* Am. Compl. ¶¶ 34, 41–42, 49–50.) However, the complaint fails to plead any facts identifying Shub as the source of the alleged defamation or that Plaintiff's two co-workers, the security officer and office manager, were the individuals to whom Shub allegedly communicated the defamatory information. Moreover, the complaint does not allege the time or manner in which the alleged statements were made.

Instead, Plaintiff's defamation claim is largely premised on conclusory statements and deductions, which this court need not credit as true when evaluating a motion to dismiss. *See In*

*re NYSE Specialists Securities Litigation*, 503 F. 3d at 95. Here, Plaintiff merely alleges that he overheard, or was informed of, rumors about his alleged sexual misconduct at the office. (*See* Am. Compl. ¶¶ 29, 32, 43-45.) From this, Plaintiff deduces that the Client Complaint must have been the basis for the rumors and that Shub must have been the source of the rumors because she was privy to the allegations against Plaintiff in the Client Complaint. (*See id.* ¶¶ 34, 40–42, 49.) Similarly, Plaintiff baldy concludes that Shub must have made the defamatory statements to the security officer and office manager because Plaintiff overheard the two discussing rumors of Plaintiff's alleged sexual misconduct. (*See id.* ¶¶ 32, 42.)

Thus, Plaintiff identifies Shub's alleged defamatory statements only through deduction, unsubstantiated by any specific details about when, where, or in what manner the statements were made. As such, Plaintiff's complaint does not give Shub the sufficient notice needed to defend herself and the complaint otherwise lacks the specificity required to state a defamation claim. *See Leung v. New York Univ.*, 2010 WL 1372541, at *8 (S.D.N.Y. Mar. 29, 2010) (dismissing defamation claims where complaint lacked specificity as to the content of the defamatory statements and to the time, place, and manner in which they were uttered); *see also Dellefave v. Access Temporaries, Inc.*, 2001 WL 25745, at *3 (S.D.N.Y. Jan. 10, 2001) (citations omitted) ("[D]eductions included in the pleadings are insufficient to state a claim" as are "pleadings which require deductions in order to state all the elements"); *Meyers v. Amerada Hess Corp.*, 647 F. Supp. 62, 66–67 (S.D.N.Y. 1986) (dismissing allegations of defamation based on Plaintiff's assertion that rumors "necessarily had to have been" caused by dissemination of defamatory statements). Accordingly, Plaintiff's defamation claim is dismissed.

   B. *Intentional Infliction of Emotional Distress*

To maintain an action for IIED under New York law, a plaintiff must show: "(1) extreme

and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *House v. Wackenhut Srvs., Inc.*, 2011 WL 6326100, at *4 (S.D.N.Y. Dec. 16, 2011) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citation omitted)). As a cause of action, it is "extremely disfavored . . . [and] routinely dismissed on pre-answer motion." *Id.* (quoting *Schaer v. City of New York*, 2011 WL 1239836, at *7 n. 4 (S.D.N.Y. Mar. 25, 2011). "Defamatory statements are generally not sufficiently extreme and outrageous to support an IIED claim." *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 372 (W.D.N.Y. 2010).

Here, Plaintiff bases his IIED claim against Shub on her alleged defamatory statements; however, the court has already concluded Plaintiff failed to plead facts establishing Shub as the source of those alleged statements. *See supra*, Part II.A. Regardless, assuming, *arguendo*, Plaintiff pled facts sufficient to identify Shub as the source of the alleged rumors, Plaintiff still has failed to state an IIED claim because he has failed to allege extreme and outrageous conduct. Extreme and outrageous conduct occurs where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993) (internal quotation marks and citations omitted). Shub's alleged communication of the details of the Client Complaint or other rumors of Plaintiff's sexual misconduct falls well short of meeting this high standard. *See House*, 2011 WL 6326100, at *4–5; *Carlson*, 679 F. Supp. 2d at 361–62, 372–73 (dismissing IIED claims where plaintiff alleged that defendants' defamatory statements "caused others to believe that she had sold or provided drugs or alcohol to students and inappropriately touched or had sex with underage students"); *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2001) ("Even a false charge of sexual

7

harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law").

Furthermore, Plaintiff's bare assertion that Shub's conduct was "extreme and outrageous" and "utterly reprehensible," (Am. Compl. ¶¶ 55, 58), is a "conclusory allegation which the [c]ourt is not required to credit on a motion to dismiss." *House*, 2011 WL 6326100, at *5 (citing *Iqbal*, 129 S. Ct. at 1949–50). Accordingly, Plaintiff's IIED claim is dismissed.

### C. Vicarious Liability

Plaintiff asserts that Goodwill, Shub's employer, should be held vicariously liable for Shub's alleged defamatory statements, both because Shub was acting with "authority arising from her agency" at Goodwill when making those statements, and because Napoli and Turner "ratified" Shub's conduct. (*See* Am. Compl. ¶ 66.) However, given that the underlying claims against Shub have been dismissed, there can be no imposition of vicarious liability against Shub's employer. *See Shapiro v. Kronfeld*, 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004) (dismissing claims premised upon a theory of respondeat superior because "there can be no imposition of vicarious liability in the absence of underlying liability"); *see also Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 545–46, 435 N.Y.S.2d 556 (N.Y. 1980); *Wende C. v. United Methodist Church, N.Y. W. Area*, 6 A.D.3d 1047, 1052 (4th Dep't 2004) (citing cases). Accordingly, Plaintiff's claim imputing vicarious liability to Goodwill is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. There being no indication that Plaintiff would be able to cure the defects in the complaint, the complaint is dismissed in its entirety with prejudice. *See Ahmed*, 2010 WL 3824168, at *5; *St. Jules v. United Parcel Serv., Inc.*, 2010 WL 1268071 (E.D.N.Y. Mar. 31, 2010) (granting unopposed motions to dismiss and dismissing complaint with no leave to amend).

SO ORDERED.

Dated: Brooklyn, New York
March 28, 2012

_____/s/_____
DORA L. IRIZARRY
United States District Judge